# STATE OF MARYLAND *vs.* THE MARYLAND AGRICULTURAL AND MECHANICAL ASSOCIATION.

*Construction of Acts of Assembly Relating to the Md. Agricultural Association.*

The Act of 1867, ch. 128, incorporated the Maryland Agricultural Association and appropriated $25,000 for the purchase of land to be held by trustees for its use and provided that upon the dissolution of the Association, or if it should hold no exhibition on said land for three successive years, then the trustees should convey the land so purchased to the State. Subsequently the city of Baltimore and other parties contributed to the funds of the Association, and the Act of 1870, ch. 89, provided that these contributors should participate with the State in the distribution of the proceeds of the sale of the land of the Association in the event of its dissolution, and that such sale should be made by the trustees in case of such dissolution. The bill in this case was filed by the State and alleged that the Association had held no exhibition upon said land for more than three years, and asked that a decree be made directing a sale of the land and distribution of the proceeds. The bill alleged that there had been a non-use by the Association of its corporate franchises but did not allege that it had been dissolved. Upon demurrer, *held,*

1st. That the Act of 1870 repealed so much of the Act of 1867 as directed a conveyance of the land to the State in the event either of a dissolution of the corporation or of a failure by the Association to hold exhibitions on the land for three successive years.

2nd. That under the Act of 1870 a sale of the land was authorized only after dissolution of the Association and not upon failure to hold exhibitions, and since the bill does not allege that the corporation has been dissolved, the demurrer thereto was properly sustained.

Appeal from the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before MCSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Isidor Rayner, Attorney- General,* for the appellant, submitted the cause on his brief.

*W. Calvin Chesnut* (with whom were *Gans & Haman* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

The bill in this case is filed by the State of Maryland against the Maryland Agricultural and Mechanical Association, Charles H. Nicolai, Trustee, The Mayor and City Council of Baltimore, The Pimlico Driving Club, and Frank Brown to obtain a decree for the sale of certain real estate, known as the Pimlico Fair Grounds, held by Charles H. Nicolai as surviving trustee, for the use of the Maryland Agricultural and Mechanical Association, and the appeal is taken from a decree of the Circuit Court for Baltimore County, sustaining a demurrer to the bill and dismissing the bill.

When this bill was filed in the Court below, there was then pending in this Court the case of *Nicolai* v. *The Maryland Agricultural and Mechanical Association, and others,* which was decided January 16th, 1903, and is reported in 96 Md. 323. The State of Maryland was not a party to that suit, but its object was to procure a decree for the dissolution of the Association, and for the sale of the Pimlico Fair Grounds and the distribution of the proceeds.

Upon demurrer to the bill in that case, it was held, 1st, That a Court of equity has no authority apart from statute, to dissolve a corporation; that the case there made was not

within any statute, and that the charter of the Association did not provide·it should be *ipso facto* dissolved, for breach of conditions subsequent, contained in the act of incorporation; 2nd, That there was no sufficiently distinct allegation that the Association had been dissolved or had ceased to exist, and that even if the charter ought to be forfeited, such forfeiture could not be enforced otherwise than by a direct proceeding instituted by the State; and, 3rd, That as under the several Acts of Assembly relating to the Association, a sale was only authorized upon its *actual* dissolution, there could be no decree made for sale in that case.

There has been no legislation altering the situation since that decision was pronounced, and there is very little difference between the averments of the two bills, their purpose being, as we have seen, substantially the same.

The allegations of the bill in this case, briefly stated, are these: 1st. That the Association was incorporated by ch. 128, of the Acts of 1867 of the General Assembly of Maryland; 2nd. That by said Act, certain persons were appointed trustees for the purposes set forth in the Act, of whom Charles H. Nicolai was the sole survivor; 3rd. That the said Act appropriated $25,000 for the purchase of land for the use of the Association, to be held by said trustees, and provided "that should the Association at any time dissolve, the said trustees or their successors shall convey the land so purchased, with all improvements thereon to the State of Maryland, free of all incumbrances, and that if said Association shall hold no exhibition on said lands for three successive years, then said land shall be so as aforesaid conveyed to the State of Maryland; " 4th. That the Pimlico Fair Grounds were so purchased and conveyed to said trustees; 5th. That certain other Acts of Assembly were subsequently passed, being ch. 89, of 1870, and ch. 73 of 1890, amending the original Act of 1867, and directing how the said sale and distribution of the proceeds should be made; 6th. That the Mayor and City Council of Baltimore, and Frank Brown held claims against the Association; 7th. "That there has been a non-use and a misuse by

the Association of its corporate powers and franchises; that the said defendant has held no exhibition on said land for many years exceeding three successive years prior to the filing of this bill, * * * and has permitted a corporation, known as the Pimlico Driving Club, to take unlawful possession of said property, and to use it in violation of the statute for its own purposes, and for the purposes of those interested therein, and that the actual purposes for which this corporation was formed under the Act of 1867, and the amendments thereof, have been entirely relinquished and abandoned;" 8th. That by a joint resolution of the General Assembly of Maryland at the January session 1902, the Attorney-General of the State was authorized and directed to take proceedings for the protection and recovery of the rights of the State in this property; 9th. That the claim of the State is far in excess of $25,000, and that it claims a first lien upon the whole of said property and improvements under the Acts of Assembly mentioned; 10th. That in view of these allegations, the property should be sold, the rights of the State be adjudicated, and the proceeds be distributed among those entitled thereto.

The bill prays. (1) That the Court will assume jurisdiction and decree a sale; (2) and for such other and further relief as the case may require.

The trustee, Charles H. Nicolai, the Mayor and City Council of Baltimore, and Frank Brown, answered, consenting to such decree as the Court should deem right. The Pimlico Driving Club, though summoned, has not answered or appeared, and the Association has demurred.

The bill does not pray for a decree dissolving the Association, and if it did, such decree could not be granted under the decision in the *Nicolai case, supra.* Nor can we regard the averments of the 7th paragraph or the bill in this case which we have transcribed, as a direct and unambiguous allegation of actual dissolution, measuring up to the requirement stated in *Nicolai's case.*

Non-use and misuse of corporate powers and franchises, and abandonment of all the purposes of incorporation are suffi-

cient ground, when proved, for forfeiture of charter in a direct proceeding for that purpose, but do not necessarily import actual dissolution.    Indeed we are not justified by anything in the brief of the Attorney-General in assuming that he so contends since he does not so declare, while he does insist that under a proper construction of the several Acts of Assembly relating to this Association, a sale may be decreed as well upon default in holding exhibitions, as upon actual dissolution of the Association.

Upon the incorporation of the Association under the Act of 1867, the State and the Association were the only parties then interested, and the provision that either upon dissolution of the Association, or upon its failure to hold exhibitions upon the lands paid for by the State, during three successive years, the land with the improvements thereon should be conveyed to the State, not only put the Association under the strongest incentive to achieve and maintain success, but avoided the delay and expense incident to a sale in event of failure of the enterprise.

The $25,000 appropriated by the State proved inadequate for the purchase of the land and the improvements necessary for the accomplishment of the purposes for which the Association was created, and the city of Baltimore appropriated an additional sum of $25,000, and citizens supplied other large sums to aid these purposes.    This led to the passage of the Act of 1870, ch. 89, as a supplement to the Act of 1867. After reciting the facts above mentioned sec. 1 of that Act provides that in case of dissolution of the Association, the city of Baltimore, and those citizens who had contributed as above stated, should participate in the net proceeds of the sale of the land and the improvements, with the State, in proportion to the amounts respectively furnished.    Sec. 2, provided that in case of dissolution the trustees named in the Act of 1867, or the survivors should make the sale; and sec. 3 repealed all parts of the Act of 1867 inconsistent with the Act of 1870. The Circuit Court held, correctly as we think, that this Act repealed so much of the Act of 1867 as authorized a convey-

ance to the State upon the breach of either condition therein contained, since any other construction would defeat the whole purpose of the Act of 1870, which was to place all contributors upon an equal footing.

The next Act of Assembly in order is ch. 128 of 1886, which appropriates $3,000 to preserve the charter of the Association, that is to enable it to continue holding the required annual exhibitions, and provides that in case of dissolution the State should be preferred to that amount. It will be seen by reference to the preamble of that Act that the Legislature regarded the failure to hold the required exhibitions as a cause of forfeiture only and not of sale under the Act of 1870.

Next in order, and lastly, comes ch. 73 of 1890, the title of which is an Act to repeal and re-enact sec. 2 of ch. 89 of the Act of 1870, with amendments. Sec. 2 as re-enacted provides that in case of the dissolution of the Association the trustees named in the Act of 1867, or their successors, should at once sell the land and improvements thereon at public auction, the Act of 1870 being silent as to the mode of sale, and also provided that the net proceeds of such sale should be applied first to the payment of all debts due by the Association, and that the balance should be divided between the contributors to the purchase of the land or its improvements in proportion to the amounts so contributed. Sec. 3 repeals all parts of the Acts to which the Act of 1890 is an amendment, which are inconsistent therewith.

In the *Nicolai case*, this Court said, "The Act of 1870 only provides for a sale in case of dissolution of said Association, and does not authorize a sale by the trustees on failure of the Association to hold exhibitions for three successive years. Nor does the Act of 1890 attempt to provide for a sale for any cause but the dissolution of the Association." The learned Judge of the Circuit Court in his opinion in this case has said. "The State has fixed the only event in the Acts of 1870 and 1890 in which it can insist upon a sale of the property and the payment of its claim, viz., the dissolution of the Association. It has ample power to dissolve the corporation,

and until this is done, it has no power to sell the prop-
erty  *  *  *  Had the Legislature intended the property
should be sold upon the failure of the Association to hold ex-
hibitions it would have been a simple matter to have so pro-
vided." The Attorney General's reply to this view of the
Court, as stated in his brief, is, that "the Acts of 1867 and
1870 must be read *in pari materia*, and that there is nothing
in the Act of 1870 which takes away the lien of the State
upon the failure of the Association to hold exhibitions for
three years, but that the intention of the Act was to transfer
this lien from the property to the proceeds of sale ;  *  *  *
and that while the State has no right to demand a conveyance,
it has the right to claim that, the condition being broken, it
can claim a return of the money that it has advanced and
proceed to sell the property." The error in this position, as
we think, is that the Act of 1870, while substituting a sale for
a conveyance, in order, by the other provisions of that Act, to
place the city of Baltimore and those citizens who aided the
Association, upon an equal footing with the State, provided for
such sale only after dissolution, and not after failure to hold
exhibitions. The lien of the State for its proportion of the sum
furnished to the Association, was created by the Act of 1870,
in substitution for the right to demand a conveyance given by
the Act of 1867, and will attach to the proceeds of sale when
made, but that sale can only be decreed upon the condition
imposed by the Acts of 1870 and 1890, neither of which pro-
vided that the sale should be made upon the double contin-
gency of dissolution, or failure to hold exhibitions, as the con-
veyance was authorized by the Act of 1867, but in plain and
unmistakable language provided but the single contingency of
dissolution as a warrant for sale. Before we could adopt the
construction contended for by the State, we should have to
read into sec. 2 of the Acts of 1870 and 1890, a contingency
which the Legislature has not written therein, viz., the failure
to hold exhibitions, and we could not, if otherwise so dis-
posed, do this, in the face of the decision in *Nicolai's case*
that neither of these Acts "provided for a sale for any cause

but the dissolution of the Association." The construction contended· for by the State is wholly incompatible with the unqualified language of this Court just quoted, and if that construction had been correct, Nicolai, as trustee, must in this case have been held entitled to a decree for sale unless the absence of the State as a party to the proceeding should have been held to defeat the right to such decree.

We fully agree with the opinion filed by the learned Judge of the Circuit Court and shall therefore affirm the decree.

> *Decree affirmed with costs to the appellee above and below.*

(Decided December 3rd, 1903.)